Okay, first, I just want to apologize. You guys have been sitting around for a while because this last case, the one attorney just wouldn't shut up. No offense to him, but he was arguing a trial as though he were a trial attorney and not an appellate court attorney. So whatever. Sorry. This is the case of Lucilia Abraham and Jose Abraham. Plaintiff appellee versus Advocate Health and Hospitals Corporation doing business is Advocate Christ Medical Center and or Advocates Children's Hospital and Chaka El-Zin MD. And this is case 124-1351. Our normal procedure is to have the appellant argue for 10 to 15 minutes. We will not normally break in unless you get way off the pattern. Then we'll start asking questions. Otherwise, we let you go and then ask our questions. Then the appellee argued his case and asked questions after, then the close. And as I say, it looks like I recognize just about every attorney here today. So, with that, I ask you, the appellant, to proceed. Thank you, Your Honor, and may it please the court. I'm Scott Howey, and I represent Defendants Appellants in this matter, Advocate Health and Hospitals Corporation, and Dr. Chaka El-Zin. The principal issues before this court concern the defining feature of a fair trial, an impartial trial of fact. And the purpose of voir dire is to filter out prospective jurors who are unable to be impartial in a particular case. In this case, two jurors equivocated about their ability to be impartial and candidly doubted that they could decide this case on evidence alone and not emotion. But the trial court seated those jurors anyway, over challenges for cause on that basis, and even after defendants exercised peremptory challenges for the same unimpeachable reasons. It was an abuse of discretion to refuse the challenges for cause, amplified by the clear error of refusing the defendants' peremptory challenges. In particular, in this case, we maintain that the trial court erred so badly that it deserves a de novo review. And the presence of those two jurors was enormously prejudicial in itself, but it gave added impact to other trial errors, including the pattern instruction on sole proximate cause, which this court has since recognized as inadequate to address that important defense. To say nothing of the repeated inflammatory remarks by the plaintiff's trial counsel, chiefly his accusations that the defendants were, in his words, experimenting with children. And all these errors, each of them reversible in its own right, accumulated to prejudice the defendants so severely as to deny them a fair trial. This court should reverse the judgment below and order a new trial. Let's start at the beginning, when the trial court denied the challenges for cause made by the defendants against Noelia Almos and Karina Rivera. The defense had ironclad reasons to challenge both of them for equivocating about their ability to judge the case impartially and on the evidence alone. Their words before the court, in the course of voir dire, when asked if they could be impartial, echoed almost verbatim the juror that this court said should have been removed for cause in People v. Delgado. And Delgado is crucially important here, not just because the juror's remarks are so eerily similar of the remarks at issue in this case, but also because the court has used Delgado as a yardstick to measure comments made in other cases. Most prominently in the case of People v. Reed, that's the one spelled R-E-I-D, Justice Wolfson's opinion for the court carefully explained why the statements of the Reed juror did not call for removal because they were not like the equivocations in Delgado. In Reed, Justice Wolfson wrote that the words of the juror in that case approached but did not reach the situation of Delgado. And the plaintiffs here don't really even address those cases on their merits or any of the cases, finding the jurors who equivocated in ways like that, like the Delgado juror and like the jurors here, should have been dismissed. What they do instead is to demean the cases that reach that conclusion and complain that this court didn't give enough detail for them to be used as precedent. But Delgado, Delgado is fairly drenched in detail. It was certainly plenty of detail that Justice Wolfson looked to and used and quoted in the Reed decision where he drew that distinction. And those details go specifically to the relevant issue here of whether the juror could be impartial. We know exactly what the jurors said in Delgado, despite the plaintiff's complaint that we don't. In Delgado, the Delgado juror said almost exactly what the jurors here said. In fact, the plaintiffs here claim that we don't know what that juror was asked in Delgado, but even that's not true. We do know because the opinion tells us and Justice Wolfson later recognized that both the trial court and the defense attorneys repeatedly asked that juror if he could be impartial in a drug case, despite his opposition to drugs. And his answer contained the very same equivocations as the jurors here. He said, I've often wondered if I could be impartial. I would like to think that I could be impartial, but personal feelings and things of that nature, which were almost verbatim some of the same things that the jurors at issue here said. They said they would like to be able to say they'd be impartial, but. They said they would like to think that they could be impartial, but. And they spoke about their emotions and the biases that they have from their work. And the answer given by the juror in Delgado contained those equivocations, which the court used to define what it means to say that a potential juror equivocated about the ability to be fair. And that definition was used as precedent for that very definition in Reed. And that definition squarely applies to what both jurors said here. And if Delgado was detailed enough for Justice Wolfson to use it as precedent in Reed, it's good enough to be precedent here as well. What about Andrew Johnson? It kind of made it sound like they didn't find that case was meaningful anymore. Johnson is a case where the there were three jurors, I believe, at issue in Johnson. We have cited that case as well, because those those jurors also equivocated in certain ways. Their words are somewhat different from the jurors in this case. And so the precedent may not be directly applicable any longer. But Delgado is still good law. Certainly, Justice Wolfson recognized its importance and used it for that purpose. It is also important to recognize that the jurors in this case were never rehabilitated as to their own self-doubt about their ability to be impartial. And that wasn't for lack of trying. The trial court did make a deliberate effort to try to rehabilitate them. But despite that effort, neither juror here ever relented, never agreed that she could be fair and impartial, not even begrudgingly. And that distinction sets them well apart from the jurors in the cases that the plaintiffs chiefly rely upon. You know, I'm reading Delgado in a little bit differently from where you're looking at it. Didn't the court just merely say that the party could not raise that issue because they still had preemptory challenges? And they did not give approval to striking the jurors. They basically said, well, you can't object to it because you still had preemptory challenges left. Now, I know your case is a little bit different because you try to use those direct challenge. But Delgado basically did not say equivocal answers disqualify the jury. Delgado was very clear. Justice Lynn's decision in that case was very, very clear that it was error to not to not excuse those jurors. Now, the court did go on to find that it was harmless error because that the I'm sorry, it was waived in Delgado because the defendant had not used preemptory challenges to to excuse that that juror, I believe. But the preemptory challenges that resounds to an issue that we'll be discussing in a moment. But the court was very clear that it was error. It just wasn't prejudicial error in that case because of the role that that preemptory challenges ended up playing further on in the process. That's not the case here. And Delgado does stand for that for the proposition that it was it was error for for the trial court not to excuse those jurors. One of the reasons that that it was it was error was that there was no rehabilitation of the juror who stated in that case that he didn't think he could be fair. That sets those cases well apart, sets that case very well apart from the cases that the plaintiffs have mainly relied upon, especially those on page 19 of their brief. The Addis versus Exelon case and People versus Tipton draw an important distinction between a case like like like those in which there has been when a juror has expressly confirmed that he or she can be fair or impartial. We have nothing like that in this case. The jurors in those cases all confirmed that they could be the FRM case that the plaintiffs also cite is to the same effect that that when there is rehabilitation and when someone has perhaps once stated some ambivalence about being fair but has later gone on to say and to confirm that he or she can be fair and impartial. Then that that may be enough to rehabilitate the juror. But neither of these jurors said anything to that effect. There is nothing even begrudgingly suggesting that they would try to do their best or that they they would that they maybe thought that they could. They never came off of that, that candid admission that they would not be able to be fair and impartial. And that's the equivocation that Delgado and other cases recognize as being something that does call for. So would you move on? We've heard enough about Delgado. Fair enough, Your Honor. But the issue of rehabilitation is certainly an important aspect. It's it's something that that cases have recognized can sometimes be enough when it's there. But it takes a fair amount to show rehabilitation. It's not enough. For example, in in Harris, the people versus Harris case where the juror said she didn't think she could keep an open mind, but later said that she could follow the judge's instructions. It was not enough. And it was error to seat that juror. And likewise, in in people versus Washington, a juror waffled about whether he could be fair and impartial. He waffled about his respect for the criminal burden of proof. And so the court explained it to him. But the appellate court found that wasn't enough to rehabilitate him because and the court said it was not enough because, and I quote the appellate court, he did not equivocally unequivocal. Sorry, he did not unequivocally state that he would be an impartial juror who would faithfully apply the applicable principles of law. And this court said it was manifestly erroneous to seat someone who hadn't given that assurance. And that describes the two jurors at issue here as well. The plaintiffs have relied on the general response of the veneer in this case or lack of a response to be more accurate. When the trial court asked a large group of people, including those jurors, if there was anyone there who couldn't keep an open mind and found it significant that no one raised their hands. But that's not enough to establish rehabilitation. It certainly falls far short of what was attempted in both Harris and Washington, where those were not enough for rehabilitation. And this is even less. It's something that wasn't said at all. And in fact, I would direct the court's attention to its own decision in March of this year in Croft versus Viper Trans. Not a case involving voir dire, but it did involve the questioning of a large group of jurors and asked them to, an entire jury in that case, asking them to self-identify if they had been affected by improper influences on the jury. And the court found that it wasn't significant in that case that none of them raised their hands to self-identify as having been affected. That was, as the court put it, not a reasonable means of ascertaining the truth. And the same is true here, that when the trial court asked the entire veneer if anyone couldn't keep an open mind, it would be too much to expect the jurors in this case to raise their hands and self-identify as being unable to be fair and impartial. And so the fact that they did not do that certainly does not establish rehabilitation sufficient to make them appropriate jurors. So you've got to move on. You've got a lot of case to cover and you're waiting down on one small part of it. So in addition to the denied challenges for cause, Your Honor, the denial of the peremptory challenges aggravated that prejudice by refusing to let the defendants use voir dire to filter out those jurors. Despite the unimpeached race-neutral explanations for the challenges, the trial court accepted the plaintiff's accusations of purposeful discrimination under Batson v. Kentucky. And the burden of proof on the three-step process that ensues from that point is always on the party objecting to the peremptory strikes. It never shifts from the party who is objecting, in this case the plaintiffs. And even as the trial court purported to follow the three-step framework that Batson sets forth, it erred in both the first and the third steps. First, by finding a prima facie case in the first place based solely on a so-called pattern of strikes against one ethnicity. And then in rejecting the defendant's race-neutral explanations for both strikes and citing the same pattern again as its basis for finding that the explanations weren't credible. Also, in response to what you're stating, the judge in that case said every single time this court has always considered those factors, I always did, okay, and I always... The initial finding and then it went back to you. So he's saying that he did that maybe a little different than the way you say, but he took each one. And if you note, you got four jurors, he went through each one singularly, not take the four as a group. So he went through each of those steps on each of the four. So when you say he didn't follow the seven steps, I have to disagree with you, counsel. I think he did. Even if the judge had followed the seven steps, Your Honor, it still remains that that applies only to the first step of the Batson inquiry. So assuming that with the sake of argument that the judge did in fact follow that first step and find an appropriate prima facie case, the process then moves to the second step where the defense is invited to provide race-neutral explanations for each of the challenges that have been made. And there's no dispute in this case that the defense did in fact offer race-neutral explanations. They're the very same explanations we've been talking about already. The fact that the jurors expressed self-doubt and were unable to confirm that they would be, to themselves even, that they would be fair and impartial jurors. Counsel, another question for you. If you got shot down once for a cause, would you bring up the same exact same challenges under preemptory where you're aggravating the judge by doing that? The purpose of giving the race-neutral explanation, Your Honor, is to tell the truth. And the truth here was that the jurors were being preemptorily challenged because of their own concerns expressed on the record about their ability to be fair. Whether the trial judge finds that an acceptable reason or not, it remains the truth. And that is really the purpose of that third step, is the determination of whether the neutral reason given by the challenging party, the party exercising the preemptory, is a genuine one. It's not whether it's a good explanation or one that the trial court agrees with or has previously acknowledged. It certainly doesn't have to be one that opposing counsel concurs with. It's whether it's truthful. It's whether it is a sincere reason for using a challenge against that party. And the burden of proof remains with the plaintiff in this case as the party disputing and objecting to the challenge. It's still with the plaintiffs to show that this was not the genuine reason, that it was a pretext. The plaintiffs didn't satisfy that burden in any of the ways that a party might try to prove that a stated reason was a pretext for discrimination. They didn't show that the reason itself was implausible or subjective. In fact, an expression of sympathy is perhaps the most plausible reason there might be for a preemptory challenge. Not far fetched at all. It's not at all subjective. It's not a suggestion that a juror gave off a bad vibe or wouldn't make eye contact or gave me a funny look. It's straight from the juror's own words on the record. And the Supreme Court recognized in McDonald versus McCartland that the juror's equivocal representation as to his ability to be fair is a race neutral reason for a preemptory challenge, even if it isn't enough for a challenge for cause. Can I just ask one question while you're still going back now to why? Where were these two preemptory challenges on Almost and Rivera? Where did they occur in the process of preemptories? Were they first two? Did they come sometime later after other preemptories? They were not the first. I can't tell you precisely, but they were after several other preemptories had been used. Several had been allowed. One had been denied as to a different juror who was then later excused for cause and is not part of the error we allege here for that reason. But there isn't any. What the plaintiff doesn't show, they can't show any disparate treatment of any other jurors who displayed the same characteristic but were not of the same race and were thus not challenged. That's the principal way that a pretext is shown. It could be shown that there were some other juror who said the same things but was not part of the same racial or ethnic group and was not challenged. But the plaintiffs have never even suggested that there's any such inconsistency, and there's none to be found in the record. They also claim that the judge could observe defense counsel's demeanor, but the judge himself didn't say anything about counsel's demeanor, let alone anything suspicious, and neither do the plaintiffs. And so without some suggestion that that was the basis for it, there is no basis. So when the burden of proof is on the plaintiff to prove that the defendants misrepresented the reasons for their peremptory challenge, it's not enough just to pronounce them not credible. The Batson framework exists to prevent that sort of vague and capricious finding, and by putting the burden of proof on the objecting party, it demands something more than mere feelings. The lack of credibility that the judge talks about has to be based on something, far-fetched reasons or inconsistent application or demonstrable demeanor. And all the plaintiffs have ever pointed to was the so-called pattern of strikes, which even if that were enough to carry the burden of proof as to a prima facie case, it's not enough to bear the burden of proving that recognized and valid explanations here were anything but genuine and sincere and the very opposite of pretext. And because the plaintiffs failed to carry their burden of proof on that issue, it was clear error to refuse the peremptory challenges and to deny the defendants their right to an impartial jury, which is yet another reason to reverse and remand for a new trial. Still another reason is the trial court's further error in giving a jury instruction on proximate cause that was inadequate to instruct on the defense of sole proximate cause and has been recognized as inadequate by another division of this court just earlier this year. The pattern instruction tells the jury that evidence of another proximate cause is not a defense and it does not include the crucial exception that was crucial here because there was evidence that another proximate cause, other than the defendant's alleged negligence, is the sole proximate cause. It's a way of defeating proximate cause by showing that something else was the proximate cause. And there was evidence here that the sole proximate cause of the condition at issue was acute flaccid myelitis, a virus resembling polio. Counsel, you're arguing Dr. Litch's statement, but Dr. Litch never gave a statement to a degree of medical certainty, so that does not match the issue that was before the trial judge there. It's easy to say that he came up with another idea, but if it's not to a degree of medical certainty, it isn't equal. I don't think. I mean, even if he used the long form, I don't think that would have been bought because it would have been argument. And if it wasn't to a degree of medical certainty, it wouldn't have gotten in, even under the old long form. Well, we'd maintain, Your Honor, that it is enough to satisfy the requirement for a jury instruction, which is fairly low. It does not have to be compelling evidence. It doesn't even, the Supreme Court has even held, it doesn't have to be persuasive evidence. But as long as it is evidence, and it was evidence here, it's appropriate for the jury instruction. Counsel, why didn't the attorney arguing the case then raise it in closing argument? I think without the jury instruction explaining that evidence of another sole, pardon me, of another proximate cause would be a defense to liability under those circumstances, it would not have been persuasive to the jury to simply be told that there was another proximate cause. The term sole proximate cause is not used in the instruction. The jury wouldn't have known what to do with that other than to know that it was being shown another proximate cause, and the jury instruction that it was given tells it that evidence of another proximate cause is not a defense to liability. And so it would not, it not only mistakenly instructed the jury, but it cut the legs out from under a defense that could have been raised credibly and perhaps successfully had there been an appropriate instruction. I want to move quickly to the remarks made by defendants or plaintiff's trial counsel during closing argument, or during questioning, I'm sorry, about experimenting on children and the suggestion that the procedure at issue here was experimental in that nature. It hardly needs to be said how incendiary a remark like that is. It evokes some of the worst horrors of the Holocaust and other crimes against humanity. It was out of place and inappropriate in a tort case and in a negligence case and deeply prejudicial to the defendants to have that image placed in front of the jury. It would be grounds for a new trial even in isolation, even under the best of circumstances. But these were not the best of circumstances and this was not an isolated remark. For one thing, it violated an in limine ruling barring reptile style arguments that appeal to the safety of the community. It was repeated as a way of scoffing at the notion that the procedure at issue was innovative and equating the idea of an innovative procedure with a medical experiment. And each time it came and each time it was made, it landed on the ears of two jurors who had already owned up to sympathies and biases towards the plaintiffs. And this is yet a further legacy of the errors in voir dire, tipping scales that were already unbalanced and depriving the defendants of an impartial jury and a fair trial. These evidentiary and instructional errors were prejudicial in their own right. They took on heightened significance and deepened the prejudice because of jurors who doubted their own ability to be impartial. They were forthcoming enough to be able to own up to what would make it difficult for them to do their civic duty as jurors and the trial court should have listened to them. The defendants want only a fair trial before an impartial jury. We ask the court to reverse the judgment below and remand for a new trial. Any questions? I have none. No, I don't have any. All right, then, Mr. Raczak, you may proceed. Thank you. Good afternoon, Your Honors. Michael Raczak here on behalf of the plaintiffs' appellees, the Abraham family. The primary difficulty that the appeal faces, I believe, as to all the points, but especially the first two, is the deep deference that the appellate court, the reviewing court, is supposed to give to the trial court, both when they're looking at poor cause challenges that have been denied and when they're looking at Batson challenges that have been granted. Especially with Batson, the courts have said you need serious error before you can reverse the court's discretionary powers. And beginning with the poor cause challenges, the suggestion, I think, is that if answers from jurors are equivocal, it's sufficient to let the attorney exercise the poor cause challenge. But that's not what the Supreme Court said in Batson, not what the appellate court said in Reed. So the fact that your answer might be equivocal is not enough. It leaves the trial court to look at the context of the rest of the answer. So it leaves the trial court to look at the juror and judge the juror's demeanor and tone and what apparently is the attitude before doing something like not letting that juror sit, that penile member sit on the jury. In this instance, the two jurors did have questions that kind of went back and forth. But the bottom line is the judge viewed their answers to be they could be fair. One of them basically said, well, I can't guarantee it because I don't know what I'm talking. I don't know what you're talking about. Yeah, that seems to be a truism. And that must be true in every case. The juror says, don't worry, I won't have any biases. Can't say that because they don't know what they're being biased about. The other juror concluded with the remarks, make sure I get this right, that I could. And the reason I'm pausing on that, I'm going to try to find a place. In the defendant's reply brief at page 12, there's a long quote about juror or penile member then almost. And it's not accurate. They've omitted the last line of her answer, which was, I would say yes, that I would be able to be fair. And that's at page 649 of the record. Not only did she say that, but she had the trial court in this case ask cleanup questions. Could you be fair? Can you wait until the end of the case? Nobody raised their hand. At least these two jurors didn't raise their hand. The suggestion was, well, people don't want to raise their hands in that circumstance. But this is at the very beginning of the case. And those jurors, the two jurors being challenged here, seemingly had no problem with raising what they thought and trying to be as honest as they could. The case that counsel talked about that came down recently, it's an advertising kind of lawyer posted something online during the trial. And that was an interference with the jury. That kind of a situation is probably going to require a real examination of the jury. That is not the situation that you get when you start a trial and the judge is just trying to figure out, can these people be fair? Do they mean they can be fair? When it comes to the Batson challenges, the pattern doesn't disappear. There is seemingly, not seemingly, there is a clear pattern there. And the judge found it. And it began with Cordera and Mora. And it began with Olivares. And the judge was so careful. I don't know how the trial judge could have been more careful than he was here. He actually went back to Chambers at one point to do his research and came back out and said, no, you have a pattern, but you don't have a pattern. You haven't excused enough Hispanic jurors to create a pattern. It was only when they got to the last two, Olivas and Rivera, that now the court could see and said it could find a clear pattern. And it wasn't just a pattern. The argument was made that, well, pattern is not enough. It's not just a pattern. The people being excused were obviously of the same ethnic group. They tried to excuse six of them, all of the same ethnic group. So the number of the group was there. And one of them, I think I believe the court recognized that they wanted so badly to get rid of the Hispanic jurors that they tried to exercise a challenge, a peremptory against all four, even though one of them hadn't even been reached yet. It was number 14, Mora. Then he reached her yet, and yet he wanted to excuse her already. And we pointed out, and nobody's arguing with it, that they came in red circled. Before these people came in the box, they red circled Hispanic jurors. The judge knew about that. Taking all that into account, the judge seemingly did the best he could under a set of law that seems to give everybody a little bit of a holding that you can use in almost any kind of case. But he said, I find that the finding, I'm sorry, the finding is of purposeful discrimination. At page 855 of the record, the court made the necessary finding on the third step. Once it makes that finding, that's an appliance. If I can just move to 15.01. Although I would much love to get a decision holding clearly that the new 15.01 encompasses everything, including the old 12.04 and the old 12.05, which address low approximate cost. The basic problem here is twofold. And first, and Your Honor mentioned it, and we argued it at length in our brief, the advocate says it's sufficient to have some evidence to get a jury instruction and cites Leonardo. But Leonardo, the Supreme Court of Leonardo used a very significant word. It's that competent evidence. And this is a medical malpractice case. There has to be some kind of expert testimony in a malpractice case. And their only expert, the only expert on which they base their argument for slow approximate cost could only say it's a possibility. Their lawyer admitted that trial. All he could say was the possibility. The case law says possibility is not probability. It's simply not a connection between the supposed enterovirus and the poor child's paralysis. And if that didn't stand alone, all of the evidence in the case affirmatively was that it was not an enterovirus. We've explained in our brief what the various doctors said, and we pointed out that the hospital chart, huge chart for all this hospitalization, does not say that this caused by an enterovirus. As a matter of fact, the chart entries almost all say the child's paralysis was caused during surgery. And we know why it was caused during surgery, because an improper method was left. The other point on 15.01 is that slow approximate cost isn't a necessary word. The Douglas case said slow approximate cost simply means that the plaintiff hasn't proven its case. And I think the underlying argument here is that in this situation, the new 15.01 is sufficient to cover the situation where the defense says it's not my fault. You didn't prove it was me. It's somebody else's fault. Your Honor, Justice Smith raised it. We pointed out in our brief. If this was really so critical, somebody would have said it in closing argument. And they did, and that strikes me as being such an admission that the lawyer at trial knew he did not have enough to actually argue that the enterovirus was a slow approximate cost. And I think he surrendered that point because he didn't want to make a closing argument in a case where he was taking a position that just wasn't borne out by the evidence. The jurors could figure out the possibility meant nothing. So he let it go. Sorry, he used the wrong word. And the other reason that the Johnson case addressing 15.01 ended up as it did was because it said there was no real prejudice. This case really mirrors the Johnson case in that regard. The real issue was causation. If there was no causation, there was no violation of the standard of care. If there was causation, there had to be violation of the standard of care. Just like in Johnson, the jurors had to understand the issue of what was causing this case. And that made this, at least in Johnson, the court said that made the sole approximate cause argument irrelevant. Unless the court has some questions for me that summarizes our position on these issues, and we've argued them at length in my brief, and I don't want to repeat it. I have a question. Ms. Ratzak, if you're representing a client and a juror, prospective juror, with somebody equivocal, but maybe they pass under the wire of the case law, wouldn't you still want to exercise a peremptory challenge to remove that juror, whether it was purple, green or white or whatever color? And if so, what's the distinguishing feature in this case? Have they forfeited their right to a peremptory challenge to Hispanics? Yeah, the answer is yes. I could understand. If somebody wants somebody gone for a cause, I might just have a gut feeling I just don't want that juror, and I don't really have a good reason for it. I would move to a peremptory, but that's why Batson exists. I can't come to that step for improper reasons. I could remove that juror under a peremptory because I didn't like some kind of an answer. But the court will not let me do that if the court decides my real reason for removing that juror is not what it seems to be from my earlier questions, but because I really don't want that juror with that particular ethnic background to be on the jury. And I don't want anybody with that ethnic background to the jury. And I would submit that's what the trial court judge found here. The judge looked at all the peremptories, found a pattern and said, I don't believe that trial counsel was removing that juror for the reasons that he gave a trial for his poor class challenges. He was removing them because of the pattern, because he did not want Hispanic jurors on this case, because they mirrored the ethnic background of the plaintiffs. That's the wrong answer, I'm sorry, but that's the whole key to Batson. What is the standard of review that we looked at the judge's decision here? On Batson, clearly erroneous. I don't think there's any quarrel about that. We quoted that in our brief. As to poor class challenges, it's still abuse of discretion, and we cited those cases in our brief, and I don't believe anybody disagrees with that. In both cases, the court would have to conclude that the trial court could not have come to any other decision. I suggest if you look at what the court, if you read what the court said, both as to challenges for class and as to Batson, this court could have been more considered in exercising its discretion. This court might not agree with his outcome, but that's, as I put it, that's not the question. The question is whether or not there's an abuse of discretion. This case could come up under a different situation, and maybe I would be on the other side of the situation. That's the question. Does this judge abuse his discretion? We suggest not for the reasons we set out in our brief. That's all I have. If there's nothing further, we obviously ask that the court affirm the verdict in the judgment. Thank you. Any other questions? No? All right, then, Mr. Howie, you can do your close. Thank you, Your Honor. I just want to briefly address the jury instruction question first. Sole proximate cause is something that is distinct from simply a denial of liability. It's a way of proving that the defense did not cause the injury at issue. It does have the implication of denying liability, but it's not an equivalent thing. It's a way of proving a defense that used to be recognized under the prior pattern instructions and was changed in 2021. This court recognized that the new instruction no longer adequately addresses that. And that's an important consideration here because the evidence does not have to rise to the level of medical certainty because the defense doesn't have the burden of proof. The plaintiff would need to be able to introduce evidence of a cause to a degree of medical certainty to show that something was the actual proximate cause of an injury. But for the purposes of a defense and to raise a reasonable doubt in the jury's mind, it is perfectly permissible to provide the evidence that Dr. Licht provided here that there was a possibility that it could have been the polio-like virus that was the cause. That's enough for the instruction. Why didn't your counsel raise that in his closing then? Because there wasn't an instruction to back it up. You need an instruction. And that is a choice made by trial counsel, but it's not a choice that waives the issue. It's one that recognizes the reality of the instructions that are going to be given to the jury. With respect to Batson, this is not the hypothetical situation that counsel was describing a moment ago in response to Justice House's question about just not wanting somebody on the jury and having a bad feeling. This is two jurors who specifically spoke of their difficulty. And I'm not talking about the challenges for cause at this point. Only with respect to peremptory challenges, they don't have to rise to the level of cause. And if the judge didn't think they were enough for a for-cause challenge, then it was incumbent upon the defense for the purpose even of preserving the issue of the challenges for cause, had to raise them as peremptory challenges. That's not racial in nature. It's strictly from the words that came out of their mouths. And given the respect that this court has shown for remarks of those type in the for-cause context, it simply can't be said that there was no basis for finding that there was only a racial motive for excluding two individuals who said things on the record that made their impartiality in question, that suggested that they had sympathies that leaned strongly toward the plaintiffs. Those are time-honored and venerable reasons that defense counsel always are looking for in the appropriate use of voir dire and the proper use of peremptory challenges without regard to the juror's race. And it certainly can't be the rule that it is impossible to use a peremptory challenge against an individual who has made those representations about his or her sympathies and biases simply because of the racial makeup of persons who had previously been challenged and who have been the basis of peremptory challenges. So for all these reasons, I was asked the court to recognize that there was no basis for finding the peremptory challenges, the explanation for the peremptory challenges to be anything but the genuine reason that it was. It was unimpeached by anything in the record or anything that the trial court recognized or identified, and that for all of these reasons, those errors further prejudice the defense in ways that simply made the trial unfair and improper. We simply asked the court for a fair trial in front of an impartial jury, and we would ask the court to reverse the judgment and remand for that purpose. Thank you. Any questions?  Mr. Raczek? No, nothing further, your honor. Thank you. All right, well, I thank you both. You both made very well-founded arguments, some I had not heard of before, so I enjoyed it. So I thank you both, and we'll let you know as soon as we get together.